MARK WALLIN (SBN 331915)
mark.wallin@btlaw.com
CAROLINE C. DICKEY (SBN 301721)
caroline.dickey@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone:   (310) 284-3880
Facsimile:   (310) 284-3894

Attorneys for Defendant
AMERISAVE MORTGAGE CORPORATION

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KUEHNER, SABDEEP BHANDAL, GURP BJANDAL, DANA DESARLE, JASPAL SOHAL, RYAN PERSON, MIKE DAVIS, LOU BORREGO, JEN POE, OSCAR SOSA, GURP BRAR, individually on behalf of themselves and all other similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>AMERISAVE MORTGAGE CORPORATION, a Georgia Corporation, and DOES 1 to 20, inclusive.<br><br>    Defendants. | Case No. 2:23-at-00058<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, 1453, AND 1711-1715**<br><br>*[Filed concurrently with Declaration of Sandra Garcia, Declaration of Mark Wallin, Esq. and Civil Cover Sheet]*<br><br>Complaint Filed:  November 10, 2022<br>Trial Date:  Not Set<br>District Judge:  TBD<br>Magistrate Judge:  TBD |

DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFFS AND PLAINTIFFS' COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant AmeriSave Mortgage Corporation ("AmeriSave") petitions the Court to remove this action from the Superior Court of the State of California for the County of Placer to the United States District Court for the Eastern District of California, pursuant to 28 U.S.C. sections 1332, 1441, 1446, 1453, and 1711-1715, for the reasons set forth below.

## I. THE STATE COURT ACTION

1. On November 10, 2022, Plaintiffs Michael Kuehner, Sabdeep Bhandal, Gurp Bahndal, Dana Desarle, Jaspal Sohal, Ryan Person, Mike Davis, Lou Borrego, Jen Poe, Oscar Sosa, and Gurp Brar ("Plaintiffs") individually and on behalf of a putative class, filed a Complaint in the Superior Court of California for the County of Placer, designated as *Michael Kuehner, Sabdeep Bhandal, Gurp Bahndal, Dana Desarle, Jaspal Sohal, Ryan Person, Mike Davis, Lou Borrego, Jen Poe, Oscar Sosa, Gurp Brar, on behalf of themselves and all others similarly situated v. AmeriSave Corporation, a Georgia Limited Liability Company, and DOES 1-20, inclusive* case number S-CV-0049453 (the "Lawsuit"). A true and correct copy of the Complaint is attached as **Exhibit A**.

2. On December 22, 2022, Plaintiffs served AmeriSave with the Summons and Complaint through CSC Global, AmeriSave's registered agent for service. Declaration of Mark Wallin, ¶4.

## II. TIMELINESS

3. A defendant in a civil action has thirty days from the date that service of the summons and complaint is complete to remove the action to federal court. 28 U.S.C. § 1446(b).

4. As set forth above, Plaintiffs served the Summons and Complaint on AmeriSave by certified mail on December 22, 2022. Removal is timely, because AmeriSave filed this removal within thirty days of that date.

### III. JURISDICTION

5. The Court has original jurisdiction over this civil action pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005) (codified at 28 U.S.C. sections 1332, 1453, and 1711-1715), as: (1) it involves 100 or more potential class members; (2) any class member is a citizen of a state different from any Defendant; and (3) the aggregate amount-in-controversy exceeds $5,000,000.00, exclusive of costs and interest. 28 U.S.C. §§ 1332(d)(2), (d)(6), and (d)(11)(B)(i).

6. Removal is proper under 28 U.S.C. section 1441(a) because a district court of the United States would have had original jurisdiction over this civil action on the basis of CAFA jurisdiction had the Complaint originally been brought in federal court.

#### A. Class Size

7. The proposed putative class is defined as: "every employee involved in AmeriSave's mass firing that occurred in the late July 2022 timeframe." Complaint, ¶ 24.

8. Between July 15, 2022 and August 15, 2022 approximately 140 employees separated from their employment with AmeriSave and therefore would be considered potential putative class members pursuant to the Complaint's definition of the class. Declaration of Sandra Garcia ("Garcia" Decl."), ¶ 27. For purposes of removal jurisdiction pursuant to CAFA, there appear to be well over 100 members in the proposed class, based upon Plaintiffs' proposed class definition.

#### B. Citizenship of the Parties

9. For removal purposes, a natural person is a citizen of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain or

to which he or she intends to return. *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

10.     Notably, Plaintiffs' Complaint fails to state where each Plaintiff was or currently is domiciled. Plaintiffs Dana Desarle and Lou Borrego at all times relevant to this action, were citizens of Nevada with their principal place of residence in Nevada during their employment with AmeriSave. Plaintiffs Desarle and Borrego resided in Reno, Nevada at the time they applied for employment in or around May and June of 2022 and resided in Nevada throughout their employment. Garcia Decl., ¶¶10, 18. Plaintiff Michael Kuehner at all times relevant to this action, was a citizen of Nevada with his principal place of residence in Nevada during his employment with AmeriSave. Plaintiff Kuehner resided in Henderson, Nevada at the time he applied for employment in or around May of 2022 and resided in California throughout his employment. Garcia Decl., ¶ 26.  Plaintiff Sabdeep Bhandal and Gurp Bahndal at all times relevant to this action were citizens of California with their principal place of residence in California during their employment with AmeriSave. Plaintiffs Sabdeep and Gurp Bhandal resided in Turlock, California at the time they applied for employment in or around April and June of 2022 and resided in California throughout their employment. Garcia Decl., ¶¶6, 8. Plaintiff Jaspal Sohal at all times relevant to this action, was a citizen of California with his principal place of residence in California during his employment with AmeriSave. Plaintiff Bhandal resided in Rocklin, California at the time he applied for employment in or around June of 2022 and resided in California throughout his employment. Garcia Decl., ¶ 12. Plaintiffs Ryan Person and Mike Davis at all times relevant to this action, were a citizens of Oregon with their principal place of residence in Oregon during their employment with AmeriSave. Plaintiffs Person and Davis resided in Portland, Oregon at the time they applied for employment in or around June of 2022 and resided in Oregon throughout their employment. Garcia Decl., ¶ 14, 16. Plaintiff Jen Pao at all times relevant to this action, was a citizen of California with her principal place of residence in California during her employment with AmeriSave.

Plaintiff Pao resided in Dublin, California at the time she applied for employment in or around April of 2022 and resided in California throughout her employment. Garcia Decl., ¶ 20. Plaintiff Oscar Sosa at all times relevant to this action, was a citizen of California with his principal place of residence in California during his employment with AmeriSave. Plaintiff Sosa resided in Diamond Bar, California at the time he applied for employment in or around June of 2022 and resided in California throughout his employment. Garcia Decl., ¶ 22. Plaintiff Gurp Brar at all times relevant to this action, was a citizen of California with his principal place of residence in California during his employment with AmeriSave. Plaintiff Brar resided in Modesto, California at the time he applied for employment in or around April of 2022 and resided in California throughout his employment. Garcia Decl., ¶ 24.

11. For removal purposes, if a party is a corporation, it is a citizen of both its state of incorporation and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1). A corporation's "'principal place of business' [as contained in section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1184 (2010). This is typically the place where the corporation "maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

12. AmeriSave is a corporation formed under the laws of Georgia. Garcia Decl., ¶ 28. AmeriSave maintains its headquarters in Atlanta, Georgia, which is where the corporation's officers direct, control, and coordinate the company's activities across the country. *Id.* Therefore, AmeriSave is a citizen of Georgia.

13. Because Plaintiffs are citizens of California, Oregon, and Nevada and AmeriSave is a citizen of Georgia, minimal diversity of citizenship as required under CAFA exists.

///

///

### C. Amount in Controversy

14. "The notice of removal may assert the amount in controversy if the initial pleading seeks: (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." 28 U.S.C. § 1446(c)(2)(A). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014). If the plaintiff or the court questions a defendant's amount in controversy allegation, removal is proper where the "district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold. 28 U.S.C. § 1446(c)(2)(B).

15. "Under [the preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the required] amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). This "burden is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiffs' claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (internal quotations omitted) (emphasis in original); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy.").

16. In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is, therefore, what amount is put "in controversy" by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any. *Korn*, *supra*, 536 F.Supp.2d, at 1204–05. The jurisdictional minimum may be

1  satisfied by claims for special and general damages, attorneys' fees and punitive
2  damages. *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002).

3        17.    Because the Complaint in this action fails to demand a specific amount of
4  monetary damages, AmeriSave only needs to show that the amount-in-controversy
5  requirement has been met for subject matter jurisdiction (diversity and CAFA) by a
6  preponderance of evidence. 28 U.S.C. §§ 1446(c)(2) and 1453 (applying section 1446 to
7  CAFA). The calculations for the amount-in-controversy required for removal under
8  diversity and CAFA jurisdiction are detailed below.

9        18.    <u>Unpaid Wages, Bonuses, and Commissions</u>: Plaintiffs seek to recover
10 unpaid wages, bonuses, and commissions on behalf of themselves and each member of
11 the potential class. Complaint ¶ 60; Prayer, ¶¶ 122, 123, 124, 126. Plaintiffs claim that
12 AmeriSave violated the implied covenant of good faith and fair dealing and failed to
13 pay them and the other putative class members the wages, bonuses, and commissions
14 they were supposedly guaranteed by their offers of employment. Complaint ¶ 10, 30, 67,
15 71, 75, 77.  In short, Plaintiffs contend that they, as well as the other members of the
16 putative class, were contractually guaranteed certain salaries, bonuses, and
17 commissions, and AmeriSave failed to pay each Plaintiff and putative class member the
18 full amount of supposedly guaranteed wages stipulated in their offer of employment.
19 Accordingly, Plaintiffs seek to recover unpaid wages, bonuses, and commissions
20 allegedly guaranteed in their offers of employment on behalf of themselves and the
21 putative class.

22       19.    Although Plaintiffs' Complaint fails to plead the specific amount of
23 damages sought, the Complaint does provide an illustrative example of the amount of
24 unpaid wages owed to one putative class member, Michael Kuehner. The Complaint
25 states that Plaintiff Kuehner's offer of employment guaranteed him $319,000 in the first
26 six months of employment but, but he only received $112,081 of those allegedly
27 guaranteed wages. Complaint ¶ 10. Accordingly, the Complaint alleges AmeriSave
28

owes Plaintiff Kuehner $206,919 in unpaid wages due to AmeriSave's breach of contract. *Id*.

20. Plaintiff Kuehner's example detailed in the Complaint provides a straightforward roadmap to calculate the accurate amount of damages at issue. Plaintiffs contend that their offers of employment guaranteed compensation that AmeriSave never paid. By comparing the total potential compensation offered to each named Plaintiff in his or her offer of employment and the total amount of compensation each named Plaintiff received in 2022 prior to their departure from AmeriSave, the named Plaintiffs' breach of contract claim has put the following amount of damages in controversy on behalf of themselves alone:

| Named Plaintiff | Total Potential Annual Compensation Offered at Employment[1] | Total Compensation Paid to Plaintiff in 2022 Prior to Plaintiff's Departure from AmeriSave[2] |
|---|---|---|
| Sabdeep Bhandal | $77,900 | $13, 916.74 |
| Gurp Bahndal | $1,350,000 | $437,346.94 |
| Dana Desarle | $186,000 | $54,254.10 |
| Jaspal Sohal | $330,000 | $71,325.14 |
| Ryan Person | $66,000 | $6,728.26 |
| Mike Davis | $85,000 | $11,059.54 |
| Lou Borrego | $9,000 | $4,664.25 |
| Jen Pao | $80,000 | $25,117.69 |

---

[1] The total potential compensation offered represents the base salary, sign-on bonuses, and any other form of compensation explicitly stated in each individual named Plaintiff's offer of employment. *See* **Exhibits B-K**. The total compensation offered does not include any commissions that Plaintiffs claim are still owed to them in the Complaint.

[2] The total compensation paid to each named Plaintiff represents that total amount of compensation AmeriSave had paid to each named Plaintiff at the time their employment with AmeriSave ended. *See* Garcia Decl., ¶¶ 6-25.

| Oscar Sosa | $250,000 | $53,511.22 |
| Gurp Brar | $225,000 | $67,466.98 |
| **Total[3]:** | $2,997,900 | $857,471.86 |

21. In total, the breach of contract claims alleged in the Complaint put $2,120,428.14 of damages in controversy on behalf of the eleven named Plaintiffs *alone*. On average, the Complaint alleges $192,766.20 of damages per named Plaintiff stemming from Plaintiffs' claim for breach of contract. When this average is applied to the remaining 129 unnamed potential putative class members (based on Plaintiffs' class definition), the Plaintiffs' class-wide claim for breach of contract puts an additional $24,866,839.80 of damages in controversy ($192,766.20 average amount in controversy for each named Plaintiffs' individual breach of contract claim x 129 unnamed putative class members). Notably, Plaintiffs' claim for breach of contract is only one of eight causes of action alleged in the Complaint, yet this single cause of action asserts damages well over the $5,000,000 threshold required by CAFA.

22. <u>Future Wages and Lost Earnings</u>: Plaintiffs' Complaint seeks to recover lost future wages and earnings resulting from Plaintiffs' claims for fraud, breach of contract, interference with prospective economic relations, negligence, and defamation. Prayer, ¶ 122-129. Plaintiffs' cause of action for fraud specifically states that Plaintiffs believed they could continue working for AmeriSave, chose not to seek alternative employment, and would "not have lost income and would not have been suddenly unemployed" but for AmeriSave's allegedly fraudulent misrepresentations. Complaint ¶ 51. Plaintiffs seek to recover lost future earnings and "damages equal to the income Plaintiffs would have received if Defendant had not defrauded them, including lost salaries, commissions, production bonuses, overrides, and so on" for their cause of

---

[3] The total amounts in the chart above also include the monies allegedly owed and unpaid to Plaintiff Michael Kuehner as stated explicitly in the Complaint.

action for fraud. Prayer, ¶ 122. In short, Plaintiffs seek to recover the salaries, bonuses, and commissions they would have received had AmeriSave not terminated their employment despite making allegedly fraudulent misrepresentations that Plaintiffs' employment was secure.

23. Plaintiffs' allege similar facts in support of their class-wide claims for breach of contract and interference with economic relations. Plaintiffs' allege they are entitled to lost future earnings, because AmeriSave allegedly breached the implied covenant of good faith and fair dealing by terminating putative class members. Complaint ¶59; Prayer ¶123. Plaintiffs' similarly allege that AmeriSave is liable for all damages, including lost wages, resulting from the alleged termination of putative class members due to the fact that AmeriSave allegedly hired employees despite knowing that they would be terminated shortly thereafter. Complaint ¶ 102; Prayer; ¶127.

24. On average, Plaintiffs were offered a base salary of $99,263.64 or 8,271.97 per month. **Exhibits B – K**. Presuming each Plaintiff is ultimately entitled to only three months of future wages, the complaint puts $272,975 in damages at issue stemming from Plaintiffs' individual claims for future wages (an average offered base salary to each plaintiff of $8,271.97 per month x 11 named plaintiffs x 3 months of future earnings).[4] When these calculations are extrapolated across the alleged putative class of 140 former employees, the total amount of damages at issue pursuant to Plaintiffs' claims for lost future wages is $3,474,227.40. (an average offered base salary to each plaintiff of $8,271.97 per month x 140 putative class members x 3 months of future earnings).

25. <u>Violation of California Warn Act</u>: Plaintiffs allege that AmeriSave violated the California Worker Adjustment and Retraining Act ("WARN"), and, therefore, Plaintiffs' and putative class members are entitled to the civil penalty of $500 for each

---

[4] This calculation only takes into account the base salaries stated in each individual Plaintiff's offer of employment. Plaintiffs' Complaint also seeks future commissions and bonuses, which were not used in this calculation. Accordingly, this projection is particularly conservative.

day of violation for each member of the putative class. Complaint, ¶ 108; Prayer, ¶ 128. The WARN Act requires employers to provide notice to all impacted employees 60 days prior to effectuating a mass layoff, termination, or relocation. Cal. Lab. Code § 1401. An employer who fails to give proper notice is subject to a civil penalty of not more than five hundred dollars ($500) for each day of the employer's violation. Cal. Lab. Code § 1403.[5] Accordingly, Plaintiffs class-wide claim for violation of the Warn Act puts $2,520,000 in damages into controversy ($500 civil penalty x 60 days x 84 putative class members who reported to California based offices or departments).[6]

26.  <u>Emotional Distress Damages</u>: Plaintiffs' class-wide claims for negligent infliction of emotional distress directly stem from AmeriSave's alleged termination of the putative class members. Plaintiffs allege that they and other putative class members suffered significant emotional distress because "they lost their jobs, disrupted relationships, lost income, long term career damage, unemployment, and more." Complaint, ¶ 96. Accordingly, the damages sought for Plaintiffs' claim for negligent emotional distress are akin to emotional distress damages awarded in wrongful termination cases.

28.  Calculating emotional distress and noneconomic in employment-related cases damages requires a fact-specific inquiry and can be difficult to determine absent discovery. California courts have awarded Plaintiffs a wide array of damages for emotional distress in employment related cases. *Compare, Roberts v. Ford Aero. & Communications Corp.* (1990) 224 Cal.App.3d 793, 797, 274 Cal.Rptr. 139 ($100,000 noneconomic damages award for "severe emotional distress" caused in part by racially

---

[5] Although the Complaint does not explicitly seek attorney's fees, attorney's fees may be recovered for a claim brought under the Warn Act. Cal. Lab. Code § 1404. Should Plaintiffs ultimately seek to recover attorney's fees, the damages in controversy in this action would rise substantially.

[6] Of the potential putative class members, approximately 94 potential putative class members reported to an office or department located in California. 10 of the 94 employees who reported to California offices or departments left the company either voluntarily or for performance related reasons. Garcia Decl. ¶ 29. Accordingly, Defendant has only included employees who reported to an office or department located in California for purposes of calculating damages pursuant to the California WARN Act.

1 motivated termination), *with, Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 584-585, 36 Cal.Rptr.3d 154 (total award of $1 million in noneconomic damages for harassment and retaliation where plaintiff suffered anxiety so severe that it caused him to develop bleeding blister in retina of his right eye, leading to permanent loss of vision.)

29. Although emotional distress damages in employment related cases vary widely, several courts have found $100,000 in non-economic emotional distress damages to be at the low end of the possible spectrum. *See, e.g. Briley v. City of W. Covina,* 66 Cal. App. 5th 119, 144, 281 Cal. Rptr. 3d 59, 81 (2021), as modified (July 14, 2021), reh'g denied (July 23, 2021), review denied (Sept. 29, 2021) (where the court reduced a jury's award of 3.5 million dollars in past and future noneconomic damages to 1 million and $100,000 respectively due to minimal evidence on record substantiating severe emotional distress, particularly future distress).

30. In the present case, a conservative projection places $7,000,000 in controversy resulting from Plaintiffs' claims for negligent infliction of emotional distress. $7,000,000 represents just $50,000 in emotional distress damages per putative class member ($50,000 x 140 putative class members). As the Court in *Briley* explains, $100,000 in future emotional distress damages is appropriate when there is little evidence of continued emotional distress in addition to evidence that Plaintiff's counsel may have improperly influenced the Jury. *Ibid.* Accordingly, Defendants estimate of $7,000,000 in class-wide emotional distress damages at just $50,000 per putative class member represents a distinctly conservative projection.

31. <u>Punitive Damages:</u> Plaintiffs seek to recover punitive damages resulting from their claims for fraud and defamation. Prayer, ¶¶ 122, 129. As discussed more thoroughly above, Plaintiffs' claims for fraud, from a damages perspective, are akin to claims for wrongful termination. Plaintiffs allege that they did not seek alternative employment and remained employed at AmeriSave due to AmeriSave's allegedly fraudulent misrepresentations that the putative class members' positions with the

company were secure. Complaint, ¶51. Plaintiffs seek to recover class-wide damages, including loss of future wages, due to the fact that AmeriSave allegedly terminated their employment despite making false statements regarding the financial health of the company and the stability of their employment. Prayer, ¶122. Plaintiffs' claims for defamation rely on the allegation that AmeriSave made publicly defamatory statements by informing the NMLS that class-members were terminated "for cause." Complaint, ¶¶ 115, 116. Plaintiffs also contend that AmeriSave falsely told third party industry professionals, recruiters, hiring managers that putative class members had been terminated because putative class members had "not gotten the job done" or did "not meet performance goals." *Id.*

32. The California Court of Appeals has reviewed cases with similar facts to the present action. In *King v. U.S. Bank Nat'l Ass'n,* 53 Cal. App. 5th 675, 266 Cal. Rptr. 3d 520 (2020), as modified on denial of reh'g (Aug. 24, 2020), a Plaintiff alleged defamation, breach of implied covenant of good faith and fair dealing, wrongful termination, and defamation related to her separation from Defendant U.S. Bank. The Court held that a 1:1 compensatory to punitive damages ratio was appropriate for a case in which reprehensibility was at the *low end* of the spectrum. *Id* at 723.

33. Accordingly, Plaintiff's claims for punitive damages have put at least $3,474,227.40 in controversy in the present action. Plaintiffs seek to recover future wages resulting from their class-wide fraud claims, which have been conservatively projected at $3,474,227.40, as explained above. Notably, Defendant's projection regarding both future wages and punitive damages are conservative. As the court explained in *King,* a 1:1 compensatory to punitive damages ratio is considered the low end of the acceptable spectrum of punitive damages. Similarly, Defendant conservatively estimated that the putative class would only be able to recover three months of future wages.

34. Total: The total amount in controversy based on conservative estimates is at least **$43,455,722.74**, as categorized below, well in excess of the $5,000,000.00

threshold.

| Claim | Amount in Controversy |
|---|---|
| Unpaid Wages due To Breach of Contract | $ 26,987,267.94 |
| Future Wages | $ 3,474,227.40 |
| California Warn Act | $ 2,520,000 |
| Emotional Distress | $ 7,000,000 |
| Punitive Damages | $ 3,474,227.40 |
| **Total** | **$ 43,455,722.74** |

### IV.  REQUIREMENTS OF 28 U.S.C. SECTION 1446.

35. In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is filed in the District Court of the United States in which the action is pending.

36. This Court is the proper venue because it is in the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

37. In accordance with 28 U.S.C. section 1446(a), this Notice of Removal is accompanied by **Exhibit A**, which is a copy of all process, pleadings, and orders served on AmeriSave.

38. In accordance with 28 U.S.C. section 1446(b), AmeriSave's Notice of Removal was filed within thirty days after completion of the initial service on AmeriSave, which was on December 22, 2022.

39. In accordance with 28 U.S.C. section 1446(d), AmeriSave will give written notice of the original removal of this action to Plaintiff via its counsel and will file a copy of that Notice with the Placer County Superior Court.

### V.  CONCLUSION

40. Because jurisdiction is proper under 28 U.S.C. sections 1332, 1441, 1446, 1453, and 1711-1715, AmeriSave respectfully requests that the Court exercise its removal jurisdiction over this action.

41. If the Court has any questions regarding the propriety of this Notice of Removal, AmeriSave respectfully requests that it issue an Order to Show Cause, so that AmeriSave may have an opportunity to address such questions.

Dated: January 23, 2023

**BARNES & THORNBURG LLP**

By: _____
Mark W. Wallin
Caroline C. Dickey
Attorneys for Defendant
AMERISAVE MORTGAGE CORP.

DEFENDANT'S NOTICE OF REMOVAL