# EXHIBIT A

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| David M. Syme (SBN: 296188) <br> SYME LAW FIRM <br> 29 Orinda Way, Suite 1843 <br> Orinda, CA 94563 <br> TELEPHONE NO.: 925-565-4208   FAX NO.: <br> ATTORNEY FOR (Name): Michael Kuehner et al, Plaintiffs | **ELECTRONICALLY FILED** <br> Superior Court of California, <br> County of Placer <br> 11/10/2022 at 05:14:27 PM <br> By: Jennifer Bunday <br> Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Placer
STREET ADDRESS: 10820 Justice Center Drive
MAILING ADDRESS:
CITY AND ZIP CODE: Roseville, CA 95678
BRANCH NAME: Hon. Howard G. Gibson Courthouse

CASE NAME:
Kuehner et al. v AmeriSave et al, and Does 1 to 20

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ **Counter**   ☐ **Joinder** <br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | | S-CV-0049453 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☑ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify): 8
5. This case ☑ is ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 11/5/2022

David M. Syme, Esq.
(TYPE OR PRINT NAME)                    ► _(signature)_    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.**  If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1.  This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet.  In item 1, you must check **one** box for the case type that best describes the case.  If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below.  A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.**  A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit.  A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading.  A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.**  In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

DAVID M. SYME, ESQ.  (Bar #: 296188)
**SYME LAW FIRM**
29 Orinda Way, Suite 1843
Orinda, CA 94563
Telephone: 925.565.4208
David@SymeLawFirm.com

**ELECTRONICALLY FILED**
Superior Court of California,
County of Placer
**11/10/2022 at 05:14:27 PM**
By: Jennifer Bunday
Deputy Clerk

Attorneys for Plaintiffs:

**MICHAEL KUEHNER , SABDEEP BHANDAL, GURP BHANDAL, DANA DESARLE, JASPAL SOHAL, RYAN PERSON, MIKE DAVIS, LOU BORREGO, JEN POE, OSCAR SOSA, GURP BRAR**

**SUPERIOR COURT FOR THE**

**COUNTY OF PLACER**

| | |
|---|---|
| **MICHAEL KUEHNER , SABDEEP BHANDAL, GURP BHANDAL, DANA DESARLE, JASPAL SOHAL, RYAN PERSON, MIKE DAVIS, LOU BORREGO, JEN POE, OSCAR SOSA, GURP BRAR, individually on behalf of themselves and all others similarly situated,**<br><br>Plaintiffs;<br><br>vs.<br><br>**AMERISAVE MORTGAGE CORPORATION, a Georgia Corporation and Does 1 to 20.**<br><br>Defendants. | **Case No.:**  S-CV-0049453<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>1. **FRAUD**<br>2. **BREACH OF CONTRACT**<br>3. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**<br>5. **NEGLIGENCE**<br>6. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br>7. **VIOLATION OF THE "WARN ACT"**<br>8. **DEFAMATION PER SE** |

**INTRODUCTION**

1. This Class Action suit is being brought by Plaintiffs on behalf of themselves and all others similarly situated against Defendant AmeriSave for their wrongful acts.

Defendant AmeriSave has acted with negligence and breached their contracts with Plaintiffs, and Plaintiffs now seek remedy from a Court of law.

## THE PARTIES

2. Plaintiffs, **MICHAEL KUEHNER, SABDEEP BHANDAL, GURP BHANDAL, DANA DESARLE, JASPAL SOHAL, RYAN PERSON, MIKE DAVIS, LOU BORREGO, JEN POE, OSCAR SOSA, and GURP BRAR** are all former employees of Defendant AMERISAVE and represent a position similar to all Class members.

3. Defendant **AMERISAVE MORTGAGE CORPORATION** is a Corporation specializing in residential mortgages. AmeriSave Mortgage Corporation is registered with the California Secretary of State as an Out of State Stock Corporation #2412786. Defendant AmeriSave has headquarters in Placer County at 3010 Lava Ridge Ct #150, Roseville, CA 95661, with a NMLS ID number 1168. Defendant AmeriSave employed Plaintiffs and all Class Members.  AmeriSave Mortgage Corporation's agent for service is LAWYERS INCORPORATING SERVICE, 2710 GATEWAY OAKS DR STE 150N, SACRAMENTO, CA  95833.

## JURISDICTION AND VENUE

4. The Defendant does business and is domiciled in Roseville, California, in the County of Placer. AmeriSave is registered with the California Secretary of State as an Out of State Stock Corporation #2412786.    Thus, jurisdiction is proper in the County of Placer, California.

## STATEMENT OF FACTS

5. In early 2022, AmeriSave initiated a major new campaign to develop a retail mortgage sales division.   As part of that campaign they hired approximately 200 new loan officers to focus on the West Coast region.

6. The new hires were given very generous employment contracts, guarantees and a variety of signing bonuses.

7. AmeriSave was aware that the lending environment was in a state of serious flux and knew that the there were almost certainly "rough times" ahead. The AmeriSave management had conversations with several of the new incoming hires wherein they represented that the upcoming "rough times" were actually a benefit, not a threat. They said the upcoming "rough times" would eliminate the competition, and leave AmeriSave in a dominant position. AmeriSave actually used this explanation as a "feature and benefit" and a recruiting tool.

8. The Plaintiffs were assured:
   a. that the company understood that there were "rough times" ahead and;
   b. that the company was prepared to "ride out the storm" and;
   c. that the company had a $1.5 billion dollar "war chest" to enable it to "ride out the storm" and;
   d. that AmeriSave had a strategy that was calculated to allow it to emerge from the difficult financial times as a dominant "player" in the residential marketplace and;
   e. that new employees could look forward to steady, well compensated employment throughout the "downturn".

9. The challenges in the mortgage market were fully anticipated by AmeriSave prior to undertaking the employment relationship.

10. Many of the regional managers were given very generous guarantees for several months. Typically, the managers were given a 6 month guarantee. The following is an example of one of the Plaintiff Regional Managers:

CLASS ACTION COMPLAINT AGAINST AMERISAVE

a. Michael Kuehner was granted a guaranteed salary of $10,000 per month plus an override of $41,500 per month for six months.  Plus a $10,000 signing bonus.

b. Mr. Kuehner was paid less any 2 months of the guarantee plus only $5,000 of the signing bonus before AmeriSave terminated him.   Therefore, Kuehner in the first 6 months, Kuehner was contractually owed a total of $319,000.

c. Kuehner was actually paid only the following:

|  |  |
|---|---|
| 15,000 | Guaranteed Commission for May |
| 2,916 | Salary  last week of May |
| 20,750 | Commission June 1 to 15 |
| 5,000 | June 1 to 15 Salary |
| 5,000 | Signing bonus (first half) June |
| 20,750 | Commission June 16 30 |
| 5,000 | Salary  June 16, 30 |
| 29,050 | July 1 to 21 Commission |
| 7,000 | Regular pay  July 1 to 21 |
| 1,615 | Paid time off July 1 to 21 |
| **$112,081** | **Total** |

d. Kuehner was therefore is still owed **$206,919**.

11. The new hires were in fact successful in writing loans and recruiting new loan officers for AmeriSave (during their short tenure).

12. The top management of AmeriSave conducted regular conference calls with many of the upper management employees.  During these calls in June and July of 2022, in the weeks preceding the mass termination, the President specifically reassured everyone that business prospects were good and that there would be no terminations.  When the

President was making these express representations, he KNEW that the termination plans were **ALREADY** moving forward:

   a. For example, one of the Regional Managers, Plaintiff Michael Kuehner had recruited a manager named Rod Jackson.  Kuehner was continuously encouraged to keep recruiting with assurances that business was good.  However, VERY NEXT DAY after Rod Jackson was approved, and Rod Jackson quit his existing employer, Rod Jackson's "position" was terminated.  Jackson was fired before he was actually employed.  This kind of bizarre activity severely damaged Kuehner's credibility with the loan officers.

13. On or about July 23, 2022, after the new hires had been employed for 1-3 months, AmeriSave summarily terminated virtually all of the new hires, many of whom are now Plaintiffs in this case.

14. Plaintiffs allege that Chief Production Officer, Leif Boyd was almost entirely responsible for the negligent actions as an agent of AmeriSave.  Mr. Boyd was later terminated, and Plaintiffs allege that Mr. Boyd's actions were largely responsible for their damages and also his termination as a result of his negligent actions.

15.  Just prior to being terminated, several of the Loan Officers had submitted loans, and were owed commissions.  However, after the terminations, commissions for some of these loans were not paid.   An example of this is Lou Borrego.

16. Plaintiffs speculate that AmeriSave had "buyer's remorse" realizing that they had been overly generous, and regretted offering such generous terms to new employees.

17. In an unexpected twist, AmeriSave actually has actually begun hiring back some of the fired employees, but on significantly less generous terms and title.

Page **5** of **43**
CLASS ACTION COMPLAINT AGAINST AMERISAVE

18. To make matters worse, derogatory entries were made on many of the terminated officers' public NMLS license records (their loan officer licenses).   Some of the officers were informed by their new employers that their official record showed a termination "for cause".  In the mortgage industry, this is very unusual and not standard practice.  This sort of report gives regulators concerns to investigate.  It is common for loan officers to be terminated for lack of production, but a lack of sales does not earn a termination "for cause".  This sort of notation gives rise to speculations that the true cause might have been rape, or sexual harassment, workplace violence, theft or other serious, or even criminal issues.

19. Similarly, AmeriSave also communicated with some of the top industry recruiters, (for example Susan Rainwater), and told these recruiters that the terminated managers "had not met performance goals" and/or "not gotten the job done" and /or other untrue statements indicating that those terminated from AmeriSave had been unsuccessful. Clearly false, clearly defamatory.

20. Finally, apparently, AmeriSave has done this before.  In 2011, AmeriSave terminated a significant number of loan officers under very similar conditions.  Plaintiffs will produce witnesses who will testify to prior instances almost identical and almost as outrageous as the one at bar.

## CLASS ACTION ALLEGATIONS

21. **Public Policy Favoring Class Actions** – California has "a public policy which encourages the use of the class action device." Sav-On Drug Stores v. Superior Court, 34 Cal. 4th 319, 340 (2004). To effectuate that public policy, trial courts have "an obligation to consider the use of. . . innovative procedural tools proposed by a party to certify a manageable class" and are urged to be "procedurally innovative." Id. at 339.

22. Plaintiffs bring this action individually, as well as on behalf of each and all other persons similarly situated and, thus, seek class certification as a class under California Code of Civil Procedure Section 382.

23. All claims alleged herein arise under California law for which Plaintiffs seek relief authorized by California law.

24. Pursuant to CCP section 382, Plaintiffs bring this action on behalf of every employee involved in AmeriSave's mass firing that occurred in the late July 2022 timeframe.

25. Excluded from the Class are governmental entities, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

26. Plaintiffs do not know the exact number of persons in the Class, but believes them to number 40 (FORTY) and 70 (SEVENTY) class members, making joinder of all these actions impracticable.

27. Plaintiffs have identified ten individuals as members of the Class already, but more are expected.

28. The identity of the remaining individual members is ascertainable through Defendant's and/or Defendant's agents' records or by public notice.

29. Plaintiffs will fairly and adequately protect the interest of the Class, as they are members of said Class and believe they are capable of fairly representing them.

30. Plaintiffs' claims are typical of the claims of the Class, which all arise from the same operative facts involving Defendant's practices.

31. A class action is the superior method for the fair and efficient adjudication of this controversy.

32. Class members are unlikely to prosecute such claims on an individual basis since all have been placed in a worse financial situation due to Defendant's practices.  Some of the Class members may also be unaware of their legal rights.

33. Defendant has acted on grounds generally applicable to the Class thereby making appropriate final declaratory relief with respect to the Class as a whole.

34. Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant breached the employment contracts between the members and the Company, Defendant's negligence cost all members varying degrees of financial damage, Defendant's did not provide the members with proper notice of termination of employment, thus may have violated the WARN Act and other violations.

35. Common questions of law and fact predominate: The questions of law and fact common to the Class predominate over questions affecting only individual class members, in that the Claims of all Class members for each of the claims herein can be established with common proof.

36. This action is brought, and may be properly maintained, as a Class Action under California Code of Civil Procedure section 382 because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. This action satisfies the typicality, numerosity, commonality and adequacy requirements for a Class Action.

37. Plaintiffs and the members of the Class have suffered and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final relief with regard to the members of the Class as a whole.

## PAROL EVIDENCE

38. California Code of Civil Procedure Section 1856 sets out California's law regarding parol evidence. Subsection (g) reads,

> "This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in Section 1860, or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement, or to establish illegality or fraud."

39. AmeriSave's employment contract was unusually short, only about a page in length. This left many aspects of the rights and obligations of the Parties undocumented.

40. A central issue in this litigation concerns the many stated and implied covenants related to the relationship between AmeriSave and its employees. The AmeriSave contract was inappropriately thin, only one page, and the parties are therefore forced to supply a number of additional terms that were obviously and reasonably understood by the Parties and were within the contemplation of the Parties.

41. Those implied covenants and provisions are rather obvious and would have been included in any fully drafted contract. These implied clauses and oral promises do not contradict the written agreement, but rather supplement it.

42. Therefore, the Parol Evidence rule does not prohibit the introduction of additional clauses and verbal agreements into evidence.

## IMPLIED CONTRACTUAL TERMS

43. In the Scott case, the California Supreme Court approved of the inclusion of implied contractual terms into employment agreements as follows:

> "We see no sound reason to exempt the
> employment relationship from the ordinary
> rules of contract interpretation which
> permit proof of implied [contract] terms."
> (Foley, supra, 47 Cal.3d at p. 681.)"

and

> "As discussed above, courts have long been
> involved in enforcing implied terms
> pertaining to a variety of employment
> benefits. PG&E does not explain why we
> should recognize implied contracts in these
> areas and not in the area of demotion."
> (Scott v. Pacific Gas & Electric Co. (1995) 11 Cal.4th 454, 46
> Cal.Rptr.2d 427; 904 P.2d 834)

44. Plaintiffs allege that the following terms were reasonably within the contemplation of the Parties and are part of the written Employment Agreement (Exhibit One):

   a. The implied covenant of good faith and fair dealing and;

   b. That the employees would be given a reasonable chance to close the loans that were brought to AmeriSave and;

   c. That AmeriSave would provide a reasonable infrastructure to allow the loans to be funded and closed and;

   d. That large regions of AmeriSave's territory would not be terminated and;

   e. That AmeriSave would provide access to market rate loans that were competitive with other providers and;

   f. That the Licenses of the Employees would be hosted with a properly licensed brokerage and;

g. That the Employees would be provided with the tools and infrastructure required to be a successful mortgage broker and;

h. That AmeriSave would remain viable and active in their geographical region for several years into the future and;

i. That AmeriSave understood market conditions and their position in the marketplace that would allow both them and their agents to be successful and;

j. That AmeriSave would continue to provide the types of mortgages they had historically provided and;

k. That AmeriSave was aware of the financial implications of expanding their workforce and;

l. That AmeriSave had sufficiently sophisticated management to manage a substantial expansion of their labor force and;

m. That the Employees would be paid for loans that they brought in; even if those loans were closed after the Employee was terminated and;

n. That accepting Employment with AmeriSave would be a better employment situation than their current mortgage brokerage and;

o. That AmeriSave wouldn't have hired dozens of new agents if they didn't have a well thought-out plan of expansion and;

p. That AmeriSave understood there would be major changes in the residential mortgage marketplace, and they knew "rough times" lay in the near future.

q. That AmeriSave understood these upcoming hazards but they believed their $1.5 Billion "war chest" would allow AmeriSave to "weather the tough times ahead".

r. That AmeriSave had a strategy to emerge from the "rough times" ahead as a dominant player after their competition had been crippled or left the industry.

s. That AmeriSave would not create situations or policies that would damage the long term reputations of the Employees, or damage their relationships with their client base.

t. That they would have stable employment for a reasonable period of time, hopefully spanning several years.

45. The aforementioned terms are entirely consistent with the written contract, adding in a number of rather obvious additional terms that clearly would have been included in the agreements had they been fully drafted.  The aforementioned clauses do not contradict any of the writings, but rather supply important additional context for the relationship between AmeriSave and the employees.

**I.**
**FIRST CAUSE OF ACTION**
**FRAUD**

46. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

47. In California, "fraud" and "deceit" are defined in California Civil Code Sections 1572, 1709, and 1710. Civil Code section 1709 defines "Fraud" generally as:

> "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

48. Civil Code section 1710 specifies four kinds of deceit:

**"A deceit, within the meaning of [section 1709], is either:**

a. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true [intentional misrepresentation of fact].

b. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true [negligent misrepresentation of fact];

   c.  The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact [concealment or suppression of fact]; or,

   d.  A promise, made without any intention of performing it [promissory fraud]."

49. Plaintiffs allege that a number of fraudulent representations made during two different time frames:

   a. During the recruitment conversations ***prior to commencement*** of employment about the business prospects of AmeriSave and the prospects for future employment which were false at the time the representations were made and;

   b. Later ***after commencement of employment***, during conference calls in the period preceding the terminations.

50. The Court in Tenet Healthsystem Desert discussed Fraud as follows:

> "[T]he trial court failed to consider that a cause of action based in fraud may arise from conduct that is designed to mislead, and not only from verbal or written statements." (Tenet Healthsystem Desert, Inc. v. Blue Cross of California (2016) 245 Cal.App.4th 821, 839 [199 Cal.Rptr.3d 901].)

51. CACI 1900 for Intentional Misrepresentation states:

Plaintiffs' claim that Defendants made false representations that harmed them. To establish this claim, Plaintiffs must prove all of the following:

   a. That Defendants represented to Plaintiffs that a fact was true;

       i.  Told Plaintiffs to continue recruiting even after they knew the terminations were planned.

ii.  Told the Regional Managers to continue to represent to their loan officers that AmeriSave was a viable employer, even after they knew it was not true.

iii.  Defendants, as Officers of AmeriSave, made verbal and written communications to Plaintiffs which boasted positive prospects for the Company and positive prospects for future employment. They represented that these statement and communications were true, and intended the Plaintiffs to rely upon them.

iv.  AmeriSave stated that they had a $1.5 Billion "war chest" to LOSE keeping the company running.  These funds were not for lending, they were willing to LOSE these funds keeping the business afloat.

b.  That Defendants knew that the representation was false when they made it, or that they made the representation without regard for its truth;

i.  During June and July, the top officers of Defendant AmeriSave knew, at the time of the conference calls, conversations and other communications, that they were already planning mass terminations and to shut down most of the Western Region activities. Therefore, Defendants knew, during June and July that these statements were false at the time they were made.

c.  That Defendants intended that Plaintiffs rely on the representation;

i.  The false statements and other communications were distributed to Plaintiffs for the purpose of inducing them to join AmeriSave and to stay at AmeriSave, and, in the case of the Regional Managers, to continue to recruit additional

Page **14** of **43**
CLASS ACTION COMPLAINT AGAINST AMERISAVE

employees.  Defendants intended to bolster the Company's appeal so that Plaintiffs would be more willing to continue working and to recruit additional employees into the Company. Plaintiffs allege that Defendants knew that they were going to terminate a large block of employees at the time Defendants made the representations.   Plaintiffs would not have continued to recruit new loan officers, and could have started searching for new employment ***but for*** the false and misleading representations.

d.  That Plaintiffs reasonably relied on Defendants' representation;

    i.  AmeriSave is a highly sophisticated and well funded nationwide mortgage company.   Reliance upon their representations was entirely reasonable.

    ii.  Upon receiving the statements and other communications from the AmeriSave top management, each individual Plaintiff did in fact reasonably rely on AmeriSave, continue working at AmeriSave, did continue to recruit additional new employees, and did not seek other employment.

    iii.  The Plaintiffs relied on the representations made by Defendants within these conference calls and documents and acted upon them.

e.  That Plaintiffs were harmed; and

    i.  Plaintiff Regional, Area and Branch managers were harmed in that they were abruptly terminated, they were left unemployed, they lost income, their reputations in the industry was damaged by bringing in new recruits under false pretenses.

f. That Plaintiff's reliance on Defendants' representation was a substantial factor in causing their harm.

      i. The false statements and communications from Defendant was the ONLY reason for the damages sustained by Plaintiffs. Plaintiffs reasonably relied upon Defendant's omissions and false representations about the future employment and business prospects at AmeriSave.

      ii. Had Defendant's representations been true, Plaintiffs would not have damaged their reputation in the industry by making offers that would never be honored, would not have lost income, and would not have been suddenly unemployed and other damages.

52. Fraud Plaintiffs are entitled to the "benefit-of-the-bargain" measure of damages, aimed at satisfying the expectancy interest of defrauded plaintiffs by putting them in the position they would have enjoyed had the false representation been true. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240.)

53. **<u>Punitive Damages</u>**: Plaintiffs allege that Chief Production Officer Leif Boyd was a "managing agent" of the AmeriSave Corporation. Plaintiffs also allege that AmeriSave had conscious disregard of the fraudulent representations made by Boyd during the hiring and management of all the employees, and also ratified his untrue statements, and later terminated him for making those statements.

54. Civil Code section 3294 specifies the requirements for enforcing Punitive Damages against an employer as follows:

> "With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

55. The primary purposes of punitive damages are punishment and deterrence of like conduct by the wrongdoer and others." (*Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 810.) The *Grimshaw* Court commented that punitive damages are "the most effective remedy" for consumer protection corporate wrongdoing.  Deterrence of 'objectionable corporate policies' serves one of the principal purposes of Civil Code section 3294.

56. The top management of Defendant AmeriSave knew that they would be implementing mass terminations, and knew that the offers that were being extended wouldn't be honored, but kept it secret and allowed the Regional, Area and Branch managers to keep making promises to new recruits.  This deception directly caused damages to the Plaintiffs and qualifies for Punitive Damages.

**II.**
**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**

57. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

58. **The At Will Clause**:   The agreements with AmeriSave will no doubt claim that the "At Will" employment clause insulates them from all manner of liabilities.   However, AmeriSave was still obligated to perform on all contractual commitments DURING the active employment, and remains liable for many obligations that survive the termination.  The "At Will" clause is not a panacea that erases all of AmeriSave's contractual breaches.

**BREACH OF CONTRACT**
**NUMBER ONE**
**IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

59. *CACI* **No. 2423:**   affirms that in every employment contract, there is an implied promise of good faith and fair dealing. This means that neither the employee nor the employer may do anything to unfairly interfere with the right of the other to receive the

benefits of the employment relationship. To prove a breach of the implied covenant of good faith and fair dealing, the Plaintiff must prove:

```
a. That the Plaintiff and AmeriSave entered into an
   employment relationship;
```

          i.   Plaintiffs and the Class were employees of AmeriSave, creating a documented employment relationship between the parties.

```
b. That the Plaintiff substantially performed their job
   duties;
```

          i.   Plaintiffs and the Class performed all of their duties and obligations for the entire time they were employed.  The evidence will show that the loan officers performed at a high level and in an entirely satisfactory manner.

```
c. That all conditions required for AmeriSave's
   performance had occurred;
```

          i.   Every condition required for AmeriSave to perform their duties and obligations had occurred.  There were no breaches on the part of the Employees, nor any unsatisfied conditions precedent.

```
d. That AmeriSave terminated the Employees (after
   promising that they would have a reasonable career at
   AmeriSave) in order to employ other loan
   representative and managers under cheaper terms;
```

      i. AmeriSave terminated Plaintiff and all class members with no just cause after a promise of a longer period of employment and for the sole reason of hiring cheaper employees.

e. That by doing so, AmeriSave did not act fairly and in good faith; and

      i. The employees were not given a reasonable chance to close the loans that were brought to AmeriSave and;

     ii. AmeriSave did not provide a reasonable infrastructure to allow the loans to be funded and closed and;

    iii. Large regions of AmeriSave's territory were terminated and;

    iv. AmeriSave did not provide access to market rate loans that were competitive with other providers and;

     v. The Employees were not provided with the tools and infrastructure required to be a successful mortgage officers and;

    vi. AmeriSave did not remain viable and active in several geographical regions and;

   vii. AmeriSave did not understand market conditions and their position in the marketplace required to allow their agents to be successful and;

  viii. AmeriSave did not continue to provide the types of mortgages they had historically provided and;

    ix. AmeriSave was not aware of the financial implications of expanding their workforce and;

     x. AmeriSave did not have sufficiently sophisticated management to manage a substantial expansion of their labor force and;

    xi. The Employees did not get paid for many of the loans that the employees brought in; including loans that were closed after the Employees were terminated and;

   xii. The Employment with AmeriSave was not a better employment situation than their previous mortgage brokerage and;

Page **19** of **43**
CLASS ACTION COMPLAINT AGAINST AMERISAVE

xiii.   AmeriSave didn't have a well thought-out plan of expansion and;

xiv.   AmeriSave did not have a plan for the "rough times" that lay in the near future and;

xv.   AmeriSave did not have, or was not willing to deploy $1.5 Billion "war chest" that would have allowed AmeriSave to "weather the tough times ahead" and;

xvi.   AmeriSave did not have a strategy to emerge from the "rough times" ahead as a dominant player after their competition had been crippled or left the industry and;

xvii.   AmeriSave did create situations and policies that damaged the long term reputations of the Employees, and damaged their relationships with their client base and;

xviii.   All of the above eliminated Plaintiffs' ability to receive the benefits of the contract.

f. That Plaintiff was harmed by AmeriSave's conduct.

i.   The loan representatives sustained numerous damages during their employment, as a result of their termination, lost earnings while unemployed, lost earnings they would have earned if they had been employed elsewhere, damage to their reputation with their long term client base, emotional damage and more.

60. Plaintiffs and Class are entitled to lost wages, bonuses, salaries, commissions and future earnings in an amount equal to their reasonable expectations when entering into the employment relationship if Defendant AmeriSave had not breached its contracts.

61. These actions violated the Covenant of Good Faith and Fair Dealing and this breach prevented Plaintiffs and members of the Class from enjoying the benefits of the employment contracts.

**BREACH OF CONTRACT**
**NUMBER TWO**
**VIOLATION OF ADDITIONAL IMPLIED COVENANTS**

62. In the Scott case, the California Supreme Court approved of the inclusion of implied

contractual terms into employment agreements as follows:

> "We see no sound reason to exempt the
> employment relationship from the ordinary
> rules of contract interpretation which
> permit proof of implied [contract] terms."
> (Foley, supra, 47 Cal.3d at p. 681.)"

and

> "As discussed above, courts have long been
> involved in enforcing implied terms
> pertaining to a variety of employment
> benefits. PG&E does not explain why we
> should recognize implied contracts in these
> areas and not in the area of demotion."
> (Scott v. Pacific Gas & Electric Co. (1995) 11 Cal.4th 454, 46
> Cal.Rptr.2d 427; 904 P.2d 834)

63. *CACI* **No. 303** lays out the requirements for breach of contract in California. In order

for a Plaintiff to recover damages for breach of contract, the Plaintiff must prove:

> g. That the Plaintiff and AmeriSave entered into a
> contract;
>> There was a written contract.

> h. That Plaintiff did all of the significant things that
> the contract required them to do;
>> There has been no allegation that Plaintiffs failed to perform or breached
>> any of their obligations.

> i. That AmeriSave failed to do something that the
> contract required them to do;
>> i. AmeriSave breached its implied covenant of good faith and fair dealing
>> and;

CLASS ACTION COMPLAINT AGAINST AMERISAVE

ii.   The employees were not given a reasonable chance to close the loans that were brought to AmeriSave and;

iii.  AmeriSave did not provide a reasonable infrastructure to allow the loans to be funded and closed and;

iv.   Large regions of AmeriSave's territory were terminated and;

v.    AmeriSave did not provide access to market rate loans that were competitive with other providers and;

vi.   The Employees were not provided with the tools and infrastructure required to be a successful mortgage officers and;

vii.  AmeriSave did not remain viable and active in several geographical regions and;

viii. AmeriSave did not understand market conditions and their position in the marketplace, and could not make their agents successful and;

ix.   AmeriSave did not continue to provide the types of mortgages they had historically provided and;

x.    AmeriSave was not aware of the financial implications of expanding their workforce and;

xi.   AmeriSave had was not sufficiently sophisticated management to manage a substantial expansion of their labor force and;

xii.  The Employees did not get paid for many of the loans that the employees brought in; including loans that were closed after the Employees were terminated and;

xiii. The Employment with AmeriSave was not a better employment situation than their previous mortgage brokerage and;

xiv.  AmeriSave didn't have a well thought-out plan of expansion and;

xv.   AmeriSave did not have a plan for the "rough times" that lay in the near future.

xvi.  AmeriSave did not have, or was not willing to deploy $1.5 Billion "war chest" that would have allowed AmeriSave to "weather the tough times ahead".

Page **22** of **43**

CLASS ACTION COMPLAINT AGAINST AMERISAVE

xvii. AmeriSave did not have a strategy to emerge from the "rough times" ahead as a dominant player after their competition had been crippled or left the industry.

xviii. AmeriSave did create situations and policies that damaged the long term reputations of the Employees, and damaged their relationships with their client base.

xix. All of the above eliminated Plaintiffs' ability to receive the benefits of the contract.

j.  That the Plaintiff was harmed; and

Plaintiffs lost their jobs, their salaries, their commissions and more damages.

k. That AmeriSave's breach of contract was a substantial factor in causing the Plaintiff's harm.

AmeriSave is the sole factor in causing the harm.

64. As stated earlier above, per both the Scott case, regarding IMPLIED CONTRACTUAL TERMS and CCP Section 1856 regarding PAROL EVIDENCE, Plaintiffs may introduce extrinsic evidence to supplement the contracts.  Such extrinsic evidence may be admitted to interpret an ambiguity and to interpret the terms of the Agreement so long as it does not contradict the written agreement.

65. All provisions and promises provided in the IMPLIED CONTRACTUAL TERMS and the PAROL EVIDENCE are applicable to the contract at issue.

66. AmeriSave hired approximately 200 employees with a promise of generous salaries, bonuses, commissions, a better workplace, a better career progress, and an opportunity to successfully sell mortgages.

67. AmeriSave breached all of its contracts with Plaintiffs and all Class members when they suddenly, and without cause terminated all of the Class in a sudden and shockingly short time period.

68. AmeriSave was therefore, in breach of the additional implied contracts.


### BREACH OF CONTRACT
### NUMBER THREE
### NON-PAYMENT OF GUARANTEES AND SIGNING BONUSES
### AND OVERRIDES AND PRODUCTION BONUSES


69. Many of the Plaintiffs, especially the Regional Managers, Area Managers, Branch Managers and some large producing loan officers were hired with Guarantees and Signing Bonuses.  Many of them had guarantees of six months or more with specified monthly payments.  Many of them had signing bonuses.  These guarantees were expressly documented in each of the employment contracts.

70. AmeriSave also breached their contracts regarding non-payment of Volume Override Bonuses and Production Bonuses.

71. Many of the guarantees, signing bonuses and salaries extended to these Plaintiffs were not paid.  AmeriSave breached these contractual obligations.


### BREACH OF CONTRACT
### NUMBER FOUR
### NON-PAYMENT OF COMISSIONS

72. Several of the Loan Officer Plaintiffs brought mortgage loans that were acceptable to AmeriSave; loans that actually did close and fund.

73. However, in several cases, the loans technically closed AFTER the Loan Officer had been terminated.   AmeriSave had an obligation to pay the commissions to the procuring Loan Officer.

74. Nonpayment to an employee is a violation of California State Law.

75. AmeriSave did not pay the commission to the Loan Officers.  This constitutes a breach of contract by AmeriSave.

## BREACH OF CONTRACT
## NUMBER FIVE
## NON-PAYMENT OF SALARIES

76. Many of the Plaintiffs, especially the Regional Managers, Area Managers, Branch Managers and some large producing loan officers were hired with Guaranteed Salaries. Many of them had guarantees of six months or more salaries.  These guaranteed salaries were expressly documented in each of the employment contracts.

77. Many of the guaranteed salary payments were not paid.  AmeriSave breached these contractual obligations.

## III.
## THIRD CAUSE OF ACTION
## NEGLIGENT INTERFERENCE WITH
## PROSPECTIVE ECONOMIC RELATIONSHIPS

78. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

## INTERFERENCE ONE
## NEGLIGENT INTERFERENCE WITH
## REGIONAL MANAGER RELATIONSHIPS

79. The Regional Managers have a very specific responsibility.  They were assigned almost exclusively to recruit many new Loan Officers and set up new office locations.   These Regional Mangers did not get involved in originating or closing loans.   Their task was strictly focused on contacting their longstanding network of loan officers and leveraging the years of trust and credibility that had developed between themselves and the Loan Officers.

80. The relationships between the Regional Managers and their collection of loyal Loan Officers is perhaps the most valuable assets that the Regional Managers have.  The reason that a Region Managers receive very high pay, is almost exclusively BECAUSE they can influence and attract large numbers of Loan Officers.   The "rolodex" of these Regional Managers is "golden".

81. Loss of the trust bond between the Regional Managers and the Loan Officers is a devastating and financially catastrophic loss to the Regional Managers.  Possibly a career ending loss.

82. ***CACI No. 2204*** is the California standard for Negligent Interference with Prospective Economic Relations. It reads,

    "To establish this claim, the Plaintiff must prove all of the following:

      a. That the plaintiff Regional Managers were in an economic relationship with their group of Loan Officers that probably would have resulted in a future economic benefit to plaintiffs;

        1. A key part of a Regional Manager's job is recruiting Loan Officers.
        2. Regional Managers have a large group of Loan Officers, sometimes into the hundreds.  Some of the Regional Managers have relationships with their group of loyal Loan Officers going back several decades.

3.  One of the main reasons that Regional Managers are highly paid is because they have the trust and loyalty of their group of Loan Officers.

4.  When a Regional Manager moves from one mortgage company to a new mortgage company, they typically take most or all of the group of loyal Loan Officers with them to the new mortgage company.

5.  The Regional Manages had a reasonable expectation of substantial income from their group of loyal Loan Officers… taking them from one mortgage company to the next … most likely for decades into the future.  However, the actions of AmeriSave had damaged these relationships.   Damaged them for years into the future… maybe forever.

6.  The financial consequences of this loss will be the subject of Expert Testimony, an economic expert.

b. That AmeriSave knew or should have known of the relationship between the Regional Managers and their Loan Officers;

1.  AmeriSave is acutely aware of the relationship between the Regional Managers and their group of loyal Loan Officers.

2.  The reason AmeriSave is willing to pay huge salaries to their Regional Managers is solely because the Regional Managers can bring over dozens of Loan Officers.

3.  So… yes… AmeriSave was very… very aware of the tight, long standing, and 100% trust based relationship between the Regional Managers and their loyal Loan Officers.

c. That AmeriSave knew or should have known that these relationships with the Loan Officers would be disrupted if it failed to act with reasonable care;

1.  It is patently obvious that a Regional Manager who induces his loyal group of Loan Officers to step into a DISASTER will immediately lose

the trust of those Loan Officers and ruins that Regional Manager's ability to bring those Loan Officers to his next Mortgage Company.

d. That AmeriSave failed to act with reasonable care;

1. AmeriSave was wildly negligent in hiring dozens of mortgage employees and then breaching all their agreements and firing most all of them in just a few weeks after their hiring.

e. That AmeriSave engaged in wrongful conduct through a series of breaches, broken promises, early terminations not based upon performance and other misdeeds.

1. This Complaint documents the wide variety of breaches, broken promises and other transgressions by AmeriSave against their employees.

f. That the relationship was disrupted;

1. The relationships between the Regional Managers and their longstanding group of Loan Officers has been severely damaged.
2. In many cases, the Loan Officers directly blame the Regional Managers for all the damages visited upon them.
3. The relationships have been severely and probably permanently damaged.

g. That Plaintiff Regional Managers were harmed; and

1. These Regional Managers may never be trusted again.
2. Some of them lost many of their previously loyal followers.
3. They were severely financially damaged.

h. That AmeriSave's wrongful conduct was a substantial factor in causing Plaintiff Regional Managers' harm.

    1. AmeriSave's actions were 100% the cause of the damages to the relationships and the prospects of future income from the lost Loan Officer relationships.

    2. NONE of the damages were caused by the Regional Managers nor anyone else.

83. The actions of AmeriSave, therefore, did negligently interfere with the relationships, and the prospective economic relationship between the Regional Managers and their long term relationships with their Loan Officers.

**INTERFERENCE TWO**
**NEGLIGENT INTERFERENCE**
**WITH LOAN OFFICER RELATIONSHIPS WITH BORROWERS**

84. Highly successful Loan Officers all have longstanding relationships with dozens of very loyal, repeat clients. Often these clients are realtors, real estate developers, "flippers" and other real estate professionals who frequently need loans.

85. This loyal collection of high-volume clients tend to follow the Loan Officers even as they move from one mortgage company to another.

86. However, if a Loan Officer fails to support these clients, they will eventually wander off and find other Loan Officers who can handle their business.

87. ***CACI* No. 2204** is the California standard for Negligent Interference with Prospective Economic Relations. It requires:

> "To establish this claim, the Plaintiff must prove all of the following:
>
> a. That the plaintiff Loan Officers were in an economic relationship with their group of Borrowers that probably would have resulted in a future economic benefit to plaintiffs;

     i.    Loan Officers work with a large group of repeat-business clients and referrals.  Some have large groups of key active clients, client lists that run into the hundreds.

    ii.   The actions of AmeriSave damaged the relationships between these Loan Officers and their Client base.

   iii.   The financial repercussions of this damage will damage Plaintiffs for years into the future.

b. That AmeriSave knew or should have known of the relationship between the Loan Officers and their group of Borrowers;

    i.    AmeriSave recruits Loan Officers based largely upon the strength of their existing, active list of key clients.  AmeriSave is acutely aware of the long-standing relationships between the Loan Officers and their loyal Clients.

c. That AmeriSave knew or should have known that these relationships with their group of Borrowers would be disrupted if it failed to act with reasonable care;

    i.    The frequent changing of positions and companies made the officers look "flighty" and unprofessional.

    ii.   After the loan officers were terminated, strangers were closing their loans.

   iii.   Many loans left in "limbo" where clients didn't know what was happening.

   iv.   Many loan officers were left unemployed after the sudden termination and couldn't serve their clients.

d. That AmeriSave failed to act with reasonable care;
    i.    AmeriSave allowed Leif Boyd to pursue negligent strategies that eventually caused all of the problems and firings.

      ii.    AmeriSave failed to properly forecast the impact of the upcoming changes in the financial markets.

    e. That AmeriSave engaged in wrongful conduct through a series of breaches, broken promises negligence and other misdeeds.

      i.    AmeriSave failed to pay salaries, guarantees, commissions, overrides, production bonuses, and more.

    f. That the relationships of the Loan Officers with their group of Borrowers was disrupted;

      i.    All of the Plaintiffs suffered serious and permanent damage to their borrower audience.  These damages will continue for decades into the future.

    g. That Plaintiff Loan Officers were harmed; and

      i.    All of Plaintiffs have lost huge salaries, bonuses, overrides, commissions and more prior to their termination and for years into the future.

    h. That AmeriSave's wrongful conduct was a substantial factor in causing Plaintiff Loan Officers' harm."

      i.    AmeriSave's negligence was the sole and only factor creating the harm to Plaintiffs.  There are no contributing factors.

88. By their actions, AmeriSave negligently interfered with the relationship between the Loan Officers and their loyal and long term group of clients.

**IV.**
**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**

89. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

90. **_CACI_ No. 400** is the California standard for Negligence. It reads:

> To establish this claim [for Negligence], the Plaintiff must prove all of the following:

> a. That the Defendant was negligent;

>> i. AmeriSave was reckless in bringing in all of these new employees when they could not handle the amount employees, thus uprooting their lives, some of which by firing only three weeks later.

> b. That the Plaintiff was harmed; and

>> i. The loan representatives sustained numerous damages during their employment, as a result of their termination, lost earnings while unemployed, lost earnings they would have earned if they had been employed elsewhere, damage to their reputation with their long term client base, emotional damage and more.

> c. That the Defendant's negligence was a substantial factor in causing the Plaintiff's harm.

>> i. Defendant AmeriSave was 100% the causative factor in the damage to the employees.  The employees had zero contribution to the damages.  The Employees complied each and every of their obligations and under the Employment Agreement and the additional implied and parol terms.

91. AmeriSave planned to deliberately "set sail into a storm", with the intent on coming out a victor "after the storm". They even represented to most of the Class members that they could "make it through the storm". In fact, they used this "pitch" as a recruiting advantage. However, when hard times finally hit, they abandoned their plans and abandoned the dozens of recently and negligently hired loan representatives.

92. Because of this negligence, Plaintiff and Class members were terminated shockingly prematurely and suffered harm thereby.

93. This negligent and reckless behavior was not just a substantial factor, but the only factor in causing the Plaintiff's harm.

94. Thus, AmeriSave is liable for negligence and all Class members are entitled to damages.

## V.
## FIFTH CAUSE OF ACTION
## NEGLEGENT INFLICTION OF EMOTIONAL DAMAGE

95. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

96.    **CACI 1620**.    Negligence - Recovery of Damages for Emotional Distress (No Physical Injury - Direct Victim) Essential Factual Elements:

Plaintiffs claim that AmeriSave's conduct caused them to suffer serious emotional distress. To establish this claim, Plaintiffs must prove all of the following:

   a.  That AmeriSave was negligent;

      i. Their hiring practices were very negligent as discussed above.

   b.  That Plaintiffs suffered serious emotional distress; and

Page **33** of **43**
CLASS ACTION COMPLAINT AGAINST AMERISAVE

i. Plaintiffs suffered significant emotional distress due to the lost jobs, disrupted relationships, lost income, long term career damage, unemployment and more.

c.   That AmeriSave's negligence was a substantial factor in causing Plaintiffs' serious emotional distress.

i. AmeriSave's actions were the exclusive cause of Plaintiffs' emotional distress.   There were no other causative factors.

d. Emotional distress includes suffering, nervousness, grief, anxiety, worry, shock, humiliation, and shame.

i. Plaintiffs' suffered all of the above distresses according to testimony.

97. It is therefore clear that AmeriSave's negligence in embarking on such a reckless and ill-fated caused significant emotional distress to all of the hired-and-then-fired employees.

**VI.**
**SIXTH CAUSE OF ACTION**
**INTENTIONAL INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC RELATIONSHIPS**

98. Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

99. In the months preceding the actual termination of the employees, Plaintiffs allege that AmeriSave management had actually planned the terminations and KNEW that they would be terminating most of the new hires.

100.   **Regional Managers**:   Despite their knowledge of the upcoming terminations AmeriSave told the Regional Managers to keep recruiting more Loan Officers even after they knew they would be terminating the group soon.

CLASS ACTION COMPLAINT AGAINST AMERISAVE

101.   **Loan Officers:**  Despite their knowledge of the upcoming terminations AmeriSave encouraged the Loan Officers to join AmeriSave, making promises to them, even after they knew they would be terminating the group soon.

102.   Because AmeriSave's management knew they would be terminating the employees while they were in the process of hiring them, they are liable for damages resulting therefrom.

**VII.**
**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE WARN ACT**

103.   Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

104.   California Labor Code sections 1400-1408 provide that an employer *may not* order a mass layoff or termination at a covered establishment unless the employer gives at least a 60 day notice of the order.  The Statute is as follows:

> Relocations, Terminations and Mass Layoffs in California are regulated by Labor Code sections 1400-1408 Generally, "an employer may not order a mass layoff, relocation, or termination at a covered establishment unless, 60 days before the order takes effect, the employer gives written notice of the order" to employees and the Employment Development Department and shall include the notice elements required by the Federal Worker Adjustment and Retraining Notification Act (29 U.S.C. section. 2101 et seq.) (Labor Code section 1401(a)-(c)).
>
> "An employer who fails to give notice as required by paragraph (1) of subdivision (a) of Section 1401 before ordering a mass layoff, relocation, or termination is liable to each employee entitled to notice who lost his or

CLASS ACTION COMPLAINT AGAINST AMERISAVE

```
her employment" for back pay and the value of
the cost of any benefits the employee may have
been entitled to up to a maximum of 60 days or
one-half the number of days that the employee
was employed by the employer, whichever is
smaller. An employer's liability may be
reduced by specific payments made. (Labor
Code section 1402(a)-(c))
```

105.    All commercial facilities or part thereof that employs 75 or more persons is covered by the **Warn Act**.

106.    AmeriSave employs more than 75 people, and thus are covered by the provisions in this Labor Code section.

107.    Plaintiffs allege that employees for more than 6 of 12 months, and who did not receive written notice of AmeriSave's planned termination where not properly warned, may be entitled to damages.

108.    Defendant AmeriSave may, with regard to some Plaintiffs, be in violation of California Labor Codes 1400-1408, and Plaintiff demands damages on behalf of themselves and all individuals similarly situated statutory damages pursuant to section 1402.

## VIII.
## EIGHTH CAUSE OF ACTION
## DEFAMATION PER SE

109.    Plaintiffs incorporate by reference, as though fully set forth herein, each and every preceding paragraph alleged in this Complaint.

110.    Plaintiffs allege that Defendant AmeriSave feared litigation for violations of the "force reduction" laws and/or the Warn Act and/or (29 U.S. Code § 2102 - Notice required before plant closings and mass layoffs).

111.     Plaintiffs further allege that to avoid the aforementioned liability(s) AmeriSave intentionally and fraudulently published to the public and the mortgage industry, that the terminations had happened "for cause" and/or due to poor job performance.  These statements were patently untrue and defamatory.

112.     In the mortgage industry, it is very uncommon to see a Loan Officer terminated "for cause".   This designation usually hints at fairly serious infractions including sexual harassment, rape, theft, workplace violence or some other type of criminal activity.  Generally speaking, mere low sales would not result in a designation of the termination as "for cause".

113.     Defamation in the context of a victim's profession constitutes Defamation per Se, and damages are presumed.

114.     Plaintiffs allege that Plaintiffs should be awarded punitive damages for AmeriSave's intentional and fraudulent defamation, in regard to both groups of employees highlighted below.

**FIRST DEFAMATION**
**FALSE NMLS ENTRIES**

115.     **CACI 1704** details the elements for a claim of DEFAMATION PER SE (in a Matter of Private Concern) as follows:

> Plaintiffs claim that AmeriSave harmed them by making one or more entries on their public NMLS licenses that they had been fired for "**For Cause**".   To establish this claim, Plaintiffs must prove all of the following:
>
>     a.   That AmeriSave published the statement to future employers and other people via their public NMLS license record and;

      i. AmeriSave reported that the Loan Officers had been terminated "For Cause".

b. That AmeriSave reasonably understood that the statement was about Plaintiffs and;

      i. Obviously, the report was placed on the NMLS record for the Loan Officers.

c. That AmeriSave reasonably understood the statement to mean that Plaintiff was fired for a serious issues, "For Cause" and;

      i. AmeriSave provided the entry on each of the NMLS Licenses.

d. That AmeriSave failed to use reasonable care to determine the truth or falsity of the statement(s) and;

      i. The statement was false and misleading. There was no "care" exercised in the publication of false information.

e. Even if Plaintiffs have not proved any actual damages for harm to reputation or shame, mortification, or hurt feelings, the law assumes that they have suffered this harm.

      i. The Loan Officers were subjected to damaged reputations, difficulty securing new employment, anxiety and other damages.

f. Without presenting evidence of damage, Plaintiffs are entitled to receive compensation for this assumed harm in whatever sum you believe is reasonable. You must award at least a nominal sum, such as one dollar.

g. Plaintiffs may also recover punitive damages to punish AmeriSave if they prove by clear and convincing evidence that AmeriSave acted with malice, oppression, or fraud.

**SECOND DEFAMATION:**
**STATEMENTS TO INDUSTRY PROFESSIONALS**

116.     The same CACI 1704 elements should be applied to statements and other
communications made by AmeriSave to industry professionals about the employees.

  a. AmeriSave made statements, and otherwise communicated to third party industry
  professionals, recruiters (for example:  Recruiter Susan Rainwater), hiring
  managers and others that the group of employees that were terminated at
  AmeriSave had "not met performance goals" and/or "not gotten the job done"
  and /or other untrue statements indicating that those terminated from AmeriSave
  had been unsuccessful.

  b. These statements by AmeriSave were enormously destructive to the future
  employment opportunities available to the terminated and defamed ex-
  employees.

117.     Regarding both instances of defamation, Plaintiffs seek damages, including
punitive damages for the damages incurred because of AmeriSave's actions.

**ADHESIVE AGREEMENT**

118.     It should be noted that the aforementioned contracts were not the result of an
"arms length" negotiation. They are boiler-plate pre-printed standard agreements.
Thus, any ambiguities are construed against AmeriSave, the author of the adhesive
documents.

**CONCLUSION**

119.      This case is about a Class of Plaintiffs, who were misled, and recklessly taken
advantage of by AmeriSave.   The Loan Officers were negligently or fraudulently
induced to join AmeriSave.   The Regional Manages were negligently or fraudulently

induced to continue recruiting new employees even after AmeriSave knew they would be terminating the incoming employees.

120.     AmeriSave recklessly entered into a large number of employment agreements with all members of the Class, apparently without assessing the implications of hiring dozens of new employees. This reckless and/or fraudulent behavior caused major upset, lost earnings, breached contracts, emotional distress, damaged reputations and other harms in various measures to all Class members. AmeriSave's recklessness imposed a variety of damages on the Class members, and we hereby demand recovery for the many and serious damages they suffered.

## STATEMENTS OF DAMAGES

121.     Individual Statements of Damages:  Each of the Class Members has different measures of damages.   Plaintiffs will submit and serve individual Statements of Damages for each of Class Member specifying the individual damages incurred.

## PRAYER

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant AmeriSave, as follows:

122.     On the First Cause of Action for **FRAUD** against Defendant AmeriSave as follows:

   a. For "benefit of the bargain" damages equal to income that Plaintiffs would have received if Defendant had not defrauded them including lost salaries, commissions, production bonuses, overrides and so on.
   b. Loss of future earnings from all sources.
   c. For punitive damages (per Civil Code 3294) as awarded by the Court.
   d. For Interest on the aforementioned past lost income at the legal rate.

e. For other such relief granted to Plaintiff as the Court deems just.

123.    On the Second Cause of Action for **BREACH OF CONTRACT** against Defendant AmeriSave as follows:

a. For economic damages equal to Plaintiff's lost salaries, commissions, overrides, guarantees, production bonuses, and so on as a result of their termination by Defendant, pursuant to CACI No. 2406;

b. Loss of future earnings;

c. For Interest on the aforementioned past lost income at the legal rate.

d. For other such relief granted to Plaintiff as the Court deems just.

124.    On the Third Cause of Action for **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** against Defendant AmeriSave as follows:

a. For economic damages of lost wages and future earnings in an amount equal to what they reasonably expected when entering into the employment relationship;

b. Loss of future earnings.

c. For Interest on the aforementioned past lost income at the legal rate.

d. For other such relief granted to Plaintiff as the Court deems just.

125.    On the Fourth Cause of Action for **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** against Defendant AmeriSave as follows:

a. For damages from emotional distress negligently inflicted on Plaintiffs.

b. For Interest on the aforementioned past lost income at the legal rate.

c. For other such relief granted to Plaintiff as the Court deems just.

126.     On the Fifth Cause of Action for **NEGLIGENCE** against Defendant AmeriSave as follows:

    a.  For "Benefit of the Bargain" economic damages of lost wages lost salaries, commissions, overrides, guarantees, production bonuses, and so on in an amount equal to what they reasonably expected when entering into the employment relationship.

    b.  Loss of future earnings.

    c.  For Interest on the aforementioned past lost income at the legal rate.

    d.  Any other further relief as the Court deems just and proper;

127.     On the Sixth Cause of Action for **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS** against Defendant AmeriSave as follows:

    a.  For "Benefit of the Bargain" economic damages of lost wages lost salaries, commissions, overrides, guarantees, production bonuses, and so on in an amount equal to what they reasonably expected when entering into the employment relationship.

    b.  For statutory damages pursuant to California Labor Code section 1402; and

    c.  For Interest on the aforementioned past lost income at the legal rate.

    d.  For other such relief granted to Plaintiff as the Court deems just.

128.     On the Seventh Cause of Action for **VIOLATION OF THE "WARN ACT"** against Defendant AmeriSave as follows:

    a. $500 Penalty for each day of violation for each of the Class Members.

    b. Interest on Penalties from date of termination.

    c. For other such relief granted to Plaintiff as the Court deems just.

129.     On the Eighth Cause of Action for **DEFAMATION PER SE** against Defendant AmeriSave as follows:

    a. For economic damages from AmeriSave's defamation.

    b. For lost future earnings.

    c. For Punitive Damages to compensate each Plaintiff for damages sustained by AmeriSave's defamatory actions.

    d. For interest on the above damages from the date of occurrence.

    e. For other such relief granted to Plaintiff as the Court deems just.

Respectfully submitted.

Dated:  November _____, 2022

SYME LAW FIRM

_____
David M. Syme, Esq.
Attorney for Plaintiffs